UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL JAMES CUMMINS,<br><br>Petitioner,<br><br>v.<br><br>MOISES BECERRA, et al.,<br><br>Respondents. | No. 1:25-cv-01853-DC-AC (HC)<br><br>ORDER GRANTING IN PART PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER<br><br>(Doc. No. 3) |

This matter is before the court on Petitioner's motion for a temporary restraining order (Doc. No. 3), which Petitioner concurrently filed with a petition for a writ of habeas corpus brought under 28 U.S.C. § 2241, challenging his ongoing immigration detention. (Doc. No. 1.) For the reasons explained below, the court will grant Petitioner's motion for a temporary restraining order, in part.

**BACKGROUND**

**A.    Factual Background**

Petitioner is an Irish national. (Doc. No. 1 at 8.) Petitioner entered the United States in February 2018 under the Visa Waiver Program outlined in 8 U.S.C. § 1187. (Doc. Nos. 1 at 9, 10 at 2.) The Visa Waiver Program permits noncitizens from certain countries to enter the United States for ninety days without a visa. *Shehu v. Attorney General*, 482 F.3d 652, 654 (3d Cir. 2007). Noncitizens who are admitted under this program may only challenge their removal upon

1  an application for asylum, withholding of removal, or relief under the Convention Against
2  Torture ("CAT"). *Id.* (citing 8 U.S.C. § 1187(b)). Accordingly, Visa Waiver Program participants
3  are granted asylum-only hearings to determine removability, and if such relief is denied, the
4  participant can be removed without further process. *Id.* at 655 (citing 8 C.F.R. § 217.4(a)(1)).

5  Under the terms of the Visa Waiver Program, because Petitioner entered in February
6  2018, Petitioner was not allowed to remain in the United States beyond May 15, 2018. (Doc. No.
7  10 at 2.) Nonetheless, Petitioner has remained continuously in the United States without
8  permission from the Department of Homeland Security ("DHS") since his entry. (*Id.*)

9  In July 2021, Petitioner was convicted in the Superior Court of California, Humboldt
10 County, on one charge of reckless driving in violation of California Vehicle Code § 23013. (Doc.
11 No. 10 at 2.) In November 2024, Petitioner was arrested in Trinity County for attempted murder
12 in violation of California Penal Code § 187(a). (*Id.*) Petitioner was held in custody in relation to
13 that charge for ten months before the charges were dismissed. (Doc. No. 3 at 10.) On September
14 3, 2025, shortly after Petitioner's release from custody related to the dismissed charges, DHS took
15 Petitioner into custody. (Doc. No. 10-1 at 2.) On that same date, DHS issued a Notice of Intent to
16 Issue a Final Administrative Removal Order charging Petitioner as removable under section
17 237(a)(1)(B) of the Immigration and Nationality Act ("INA"). (*Id.* at 2, 11–12.) Petitioner
18 indicated that he wished to request asylum, withholding of removal, or CAT relief on that form.
19 (*Id.*) Petitioner's removal order to Ireland was made final, and his asylum claim was referred to
20 an immigration judge on September 15, 2025. (*Id.* at 14–15.) Petitioner's next immigration
21 hearing relating to his asylum claim is scheduled for January 13, 2026, in Adelanto Immigration
22 Court. (*Id.* at 3.)

23 On November 19, 2025, Petitioner filed a humanitarian parole request pursuant to INA
24 section 212(d)(5) relating to a rare and serious medical condition for which Petitioner is not
25 receiving adequate treatment in detention. (Doc. No. 3 at 2.) Petitioner also alleges that he has
26 been assaulted while detained by DHS. (*Id.*) DHS has not responded to Petitioner's parole
27 request. (*Id.*)
28 /////

**B.      Procedural Background**

On December 15, 2025, Petitioner filed his petition for writ of habeas corpus asserting the following claims: (1) violation of the Fifth Amendment Due Process Clause relating to his continued detention; (2) violation of the INA and implementing regulations relating to Respondents' failure to provide Petitioner with an individualized bond hearing; (3) violation of 8 C.F.R. § 212(b) and Immigration and Customs Enforcement ("ICE") Parole Directive 1102.1 relating to ICE's failure to respond to Petitioner's humanitarian parole request; and (4) immediate release under habeas corpus. (Doc. No. 1 at 3–4.)

Also on December 15, 2025, Petitioner filed the pending motion for a temporary restraining order seeking his "[r]elease from ICE custody pending adjudication of his asylum and parole proceedings." (Doc. No. 3 at 7.)

On December 19, 2025, Respondents timely filed an opposition. (Doc. No. 10.) On December 21, 2025, Petitioner timely filed his reply. (Doc. No. 11.)

**LEGAL STANDARD**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20 (2008). A plaintiff seeking a temporary restraining order bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).

A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the [motion for injunctive relief]." *Cal. Rifle & Pistol Ass'n, Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1048 (C.D. Cal. 2024); *see*

*also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015).

## ANALYSIS

**A.     Likelihood of Success on the Merits**

      1.     <u>Immediate Release</u>

Petitioner contends that his continued detention violates his Fifth Amendment right to due process pursuant to the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. No. 3 at 6.) In *Zadvydas*, the Supreme Court cautioned that a noncitizen cannot be held indefinitely after his final order of removal is entered, despite there being no explicit statutory limitation to this time period, because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem" under the Fifth Amendment Due Process Clause. *Zadvydas*, 533 U.S. at 690. Accordingly, the Court held that after a presumptively reasonable six-month period of detention following the removal order, a noncitizen must be released if he demonstrates that there is "good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. This six-month period of reasonableness has been extended to other periods of immigration detention not related to post-removal period proceedings. *See, e.g., Nadarajah v. Gonzales*, 443 F.3d 1069, 1078 (9th Cir. 2006) (adopting the *Zadyvas* six-month presumption of reasonableness to all immigration detention statutes: "applying the Supreme Court's statutory analysis to the instant case, we conclude that the general immigration detention statutes do not authorize the Attorney General to incarcerate detainees for an indefinite period. Rather, . . . we conclude that the statutes at issue permit detention only while removal remains reasonably foreseeable").

Here, Petitioner has been detained for approximately three months, therefore his continued detention is presumptively reasonable. Moreover, Petitioner has been found removable and is actively pursuing his asylum claim for relief from removal, with his next immigration court date set for January 13, 2026. (Doc. 10-1 at ¶ 13.) Thus, his detainment is presumptively reasonable, and Petitioner has failed to show that there is no significant likelihood of removal in the

4

reasonably foreseeable future.

Petitioner also argues that this court has discretion to release him because "conditions of confinement threaten [his] health and violate due process." (Doc. No. 3 at 6.) Petitioner cites *Doe v. Kelly*, 878 F.3d 710 (9th Cir. 2017), as support for this proposition. In *Kelly*, the court granted a preliminary injunction requiring that Petitioners being held in an immigration detention center for more than 12 hours be provided "bedding, including mats and Mylar blankets and some means to maintain personal hygiene." 878 F.3d at 719. That decision did not address medical treatment. Thus, *Kelly* does not support Petitioner's request for immediate release as a remedy for Respondents' alleged failure to provide him adequate treatment for his medical condition. Accordingly, the court will deny Petitioner's request for immediate release, albeit without prejudice to Petitioner filing a request for injunctive relief if his detainment exceeds six months and his removal is not reasonably foreseeable at that time.

### 2. Bond Hearing

While Petitioner does not explicitly seek a bond hearing in his motion, he does allege that Respondents have intentionally mischaracterized the nature of his detainment to deprive him of his constitutional right to be heard in a bond hearing for his release from confinement. (Doc. No. 11 at 3.) Respondents, on the other hand, argue that Petitioner is not statutorily entitled to a bond hearing because Petitioner is detained under 8 U.S.C. 1187(c)(2)(E)—a statute specific to noncitizens who have overstayed their visa waiver admission that is silent as to bond hearings—rather than 8 U.S.C. §§ 1225 or 1226, which are the statutes that apply generally to noncitizens detained while their removal proceedings are adjudicated and executed. (Doc. No. 10 at 5.)

Pursuant to 8 U.S.C. § 1187(c)(2)(E):

> [A] country may not be designated as a [Visa Waiver Program] country unless . . . [t]he government of the country accepts for repatriation any citizen, former citizen, or national of the country against whom a final executable order of removal is issued not later than three weeks after the issuance of the final order of removal. Nothing in this subparagraph creates any duty for the United States or any right for any alien with respect to removal or release. Nothing in this subparagraph gives rise to any cause of action or claim under this paragraph or any other law against any official of the United States or of any State to compel the release, removal, or consideration for release or removal of any alien.

5

8 U.S.C. § 1187(c)(2)(E). In support of their position that a bond hearing before an immigration judge is not provided under § 1187, Respondents cite the Board of Immigration Appeals decision in *Matter of A.W.*, 25 I. & N. Dec. 45, 2009 WL 8628885 (BIA 2009). (Doc. No. 10 at 5.) In *A.W.*, the Board of Immigration Appeals held that, because immigration judges only have the authority to consider matters delegated to them by the Attorney General and the INA, and "[b]ecause the Attorney General no longer has authority over bond proceedings relating to aliens, like the applicant, who have been admitted pursuant to the Visa Waiver Program, he cannot delegate any such authority to the Immigration Judge." *A.W.*, 2009 WL 8628885 at *3.

Assuming, *arguendo*, that the *A.M.* interpretation of § 1187 is correct (an interpretation many courts reject),[1] that statute does not permit DHS to detain noncitizens indefinitely without the opportunity to be considered for bond. Indeed, several courts in this district have held that due process requires that any noncitizen detained under § 1187 must be provided a bond hearing if they are held for an unreasonable period of time. *See Mitka v. ICE Field Office Director*, No. 19-cv-00193-MJP-BAT, 2019 WL 5901970, at *2 (W.D. Wash. Sep. 6, 2019) ("The Court concludes that the Ninth Circuit's constitutional concerns [regarding unreasonable immigrant detention] apply to [Visa Waiver Program] entrants who are detained pending asylum only proceedings."), adopted by 2019 WL 5892025, at *1 (W.D. Wash. Nov. 12, 2019). To determine whether a noncitizen's detention has become unreasonable, courts apply a "multi-factor, case-specific analysis" that considers the following factors: "(1) [t]he total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the

---

[1] Several courts across the country have held that the *A.M.* interpretation is arbitrary and capricious, and that 8 C.F.R. § 1236.1(d) authorizes DHS to delegate to an immigration judge the authority to set bond for Visa Waiver Program participants. *See Sutaj v. Rodriguez*, No. 16-cv-5092-JMV, 2017 WL 66386, at *5 (D.N.J. Jan. 5, 2017) ("[T]he BIA arbitrarily and capriciously interpreted the effect of transferring the delegation of immigration enforcement and administrative functions from the Attorney General to the Secretary of Homeland Security."); *Neziri v. Johnson*, 187 F. Supp. 3d 211, 213 (D. Mass. 2016) ("The BIA offers no explanation, however, as to why the Secretary of Homeland Security cannot delegate any [bond-setting] authority to the Immigration Judge under 8 U.S.C. § 1226(a) or where in 8 U.S.C. § 1187(c)(2)(E) the BIA finds the Secretary of Homeland Security's authority to detain aliens.") (citation omitted).

1 government; and (6) the likelihood that the removal proceedings will result in a final order of
2 removal." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106–07 (W.D. Wash. 2019); *Mitka*, 2019
3 WL 5901970, at *2; *Doe v. Andrews*, No. 25-cv-00333-JLT-HBK, 2025 WL 3280777, at *8
4 (E.D. Cal. Nov. 25, 2025) (collecting cases).

5     *First*, Petitioner's almost four-month detention, while not as long as the 16-month
6 detention in *Mitka*, is a substantial period of time for Petitioner to be held without having any
7 opportunity to be heard on why he believes he should be released. Thus, consideration of this first
8 factor weighs in Petitioner's favor.

9     *Second*, neither party has submitted any evidence relating to the likely duration of future
10 detention. However, the fact that Petitioner has been in detention for nearly four months without
11 being heard by an immigration judge, and the fact that Petitioner's November 19, 2025 request
12 for humanitarian parole has thus far gone unanswered, indicate Petitioner is likely to be detained
13 further while his asylum claim is adjudicated. Consideration of the second factor therefore weighs
14 slightly in Petitioner's favor.

15     *Third*, the court finds the conditions of Petitioner's detainment weigh heavily in
16 Petitioner's favor. Petitioner has submitted substantial documentation showing that he has been
17 diagnosed with a rare and life-threatening medical condition. (Doc. Nos. 4–4-3.) Petitioner attests
18 that he has not received adequate treatment for this medical condition while in ICE custody. (Doc.
19 No. 3 at 15.) Petitioner additionally attests that he has been assaulted while in ICE custody. (*Id.*)
20 Accordingly, consideration of the third factor weighs heavily in Petitioner's favor.

21     *Fourth*, there is no record of delays in the removal proceedings caused by Petitioner other
22 than his statutorily permitted assertion of an asylum claim. Accordingly, the court finds this
23 fourth factor to be neutral.

24     *Fifth*, Petitioner has presented evidence that Respondents have not addressed his parole
25 application, which Petitioner submitted approximately two and one-half months after DHS took
26 Petitioner into custody, thereby prolonging Petitioner's time in confinement while removal
27 proceedings are pending. Thus, consideration of the fifth factor weighs in Petitioner's favor.

28     *Sixth*, given the parties' competing contentions, there is no clear indication whether the

1  removal proceedings are likely to result in a final order of removal. Respondents contend that
2  Petitioner's health diagnosis is not "based on a statutorily protected ground on which he can
3  obtain asylum." (Doc. 10 at 1–2.) Petitioner contends that he will be eligible for "adjustment of
4  status under INA § 245 once the I-130 is filed" and that he is "preparing a U-visa application
5  after" the physical assault in custody, which creates an additional avenue of relief. (Doc. No. 11
6  at 6.) Accordingly, because it is not clear that removal proceedings are likely to result in a final
7  order of removal, the court finds this sixth factor does not weigh in either party's favor.

8  Upon consideration of all six factors, the court finds that Petitioner is likely to succeed in
9  showing that the length of his detention has become unreasonable and thus due process requires
10 that he be provided a bond hearing in front of an immigration judge so that he can be heard on
11 why he believes he should not continue to be detained while his asylum claim proceeds. In
12 following other courts in the Ninth Circuit, this court also holds that the government must
13 "provide clear and convincing evidence to justify [Petitioner's] continued detention" at that bond
14 hearing. *Mitka*, 2019 WL 5901970 at *4 (citing *Banda*, 85 F. Supp. 3d at 1120–21).

15 **B.    Irreparable Harm**

16 It is well established that the deprivation of a constitutional right "unquestionably
17 constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting
18 *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a
19 constitutional right is involved, most courts hold that no further showing of irreparable injury is
20 necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (*quoting* Wright,
21 Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)); *Baird v. Bonta*, 81 F.4th
22 1036, 1040 (9th Cir. 2023) ("It is well-established that the first factor is especially important
23 when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he
24 is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable
25 harm no matter how brief the violation.")

26 Therefore, the second *Winter* factor weighs in favor of granting Petitioner's request for
27 injunctive relief.

28 **C.    Balance of the Equities and Public Interest**

8

The court now turns to the last two *Winter* factors. The balance of the equities and public interest analyses merge when the government is the opposing party, as is the case here. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

"In cases implicating removal, 'there is a public interest in preventing [noncitizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm.'" *Nguyen v. Scott*, No. 2:25-cv-01398, 2025 WL 2419288, at *28 (W.D. Wash. Aug. 21, 2025) (quoting *Nken*, 556 U.S. at 436). Despite any interest the government may have in promptly executing removal orders, "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)).

Finally, that Petitioner has shown a likelihood of success on the merits tips the public interest further in his favor. *Riley's Am. Heritage Farms v. Elasser*, 32 F.4th 707, 731 (9th Cir. 2022) (quoting *Melendres*, 695 F.3d at 1002).

Therefore, the third and fourth *Winter* factors also weigh in favor of granting Petitioner's request for injunctive relief. Because all four *Winter* factors weigh in Petitioner's favor, the court finds that injunctive relief is warranted.

**D.     Bond**

Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief 'only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" *Id.* (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Johnson*, 572 F.3d at 1086 (quoting *Jorgensen*, 320 F.3d at 919). Neither party addressed the issue of bond in their briefing.

The court finds that no security is required here. Courts regularly waive security in cases like this one. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe v. Andrews*, No. 25-cv-01163-KES-SKO, 2025 WL 2716910, at *10 (E.D. Cal. Sep. 23, 2025); *Pinchi v. Noem*, No. 25-cv-05632- RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

## CONCLUSION

For the reasons explained above,

1. Petitioner Daniel James Cummins's motion for a temporary restraining order (Doc. No. 3) is GRANTED IN PART as follows:

   a. Petitioner's request for immediate release is DENIED without prejudice;

   b. Respondents must provide Petitioner with a constitutionally compliant bond hearing by no later than fourteen (14) days from the entry date of this order;

   c. At that bond hearing, the government bears the burden to justify, by clear and convincing evidence, Petitioner's continued detention while his asylum claim proceeds; and

   d. This matter is referred to the assigned magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated:   **December 23, 2025**

Dena Coggins
United States District Judge