UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL JAMES CUMMINS,<br><br>Petitioner,<br><br>v.<br><br>MOISES BECERRA, et al.,<br><br>Respondents. | No. 1:25-cv-01853-DC-AC<br><br>ORDER DENYING PETITIONER'S MOTION TO ENFORCE AND MODIFY HABEAS RELIEF<br><br>(Doc. Nos. 19, 29) |

This matter is before the court on Petitioner Daniel James Cummins's motion to enforce and modify habeas relief. (Doc. No. 19.) Pursuant to Local Rule 230(g), the court will decide the pending motion upon the record and briefs on file (Doc. Nos. 12, 14) and hereby vacates the motion hearing set for January 16, 2026.[1] For the reasons explained below, the court will deny Petitioner's motion to enforce and modify habeas relief. (Doc. No. 19.)

**BACKGROUND**

**A.    Factual Background**

Petitioner is an Irish national. (Doc. No. 1 at 8.) Petitioner entered the United States in

---

[1] On January 14, 2026, the court set the pending motion for hearing on January 16, 2026. (Doc. No. 26.) On that same day, Petitioner filed a request for telephonic appearance, or in the alternative a request to vacate the January 16, 2026, in-person hearing and deem the motion submitted on the papers. (Doc. No. 29.) The court will deny Petitioner's request for a telephonic appearance as moot.

1

1  February 2018 under the Visa Waiver Program outlined in 8 U.S.C. § 1187. (Doc. Nos. 1 at 9; 10
2  at 2.) The Visa Waiver Program permits noncitizens from certain countries to enter the United
3  States for ninety days without a visa. *Shehu v. Attorney General*, 482 F.3d 652, 654 (3d Cir.
4  2007). Noncitizens who are admitted under this program may only challenge their removal upon
5  an application for asylum, withholding of removal, or relief under the Convention Against
6  Torture ("CAT"). *Id.* (citing 8 U.S.C. § 1187(b)). Accordingly, Visa Waiver Program participants
7  are granted asylum-only hearings to determine removability, and if such relief is denied, the
8  participant can be removed without further process. *Id.* at 655 (citing 8 C.F.R. § 217.4(a)(1)).

9  Under the terms of the Visa Waiver Program, because Petitioner entered in February
10 2018, Petitioner was not allowed to remain in the United States beyond May 15, 2018. (Doc. No.
11 10 at 2.) Nonetheless, Petitioner has remained continuously in the United States without
12 permission from the Department of Homeland Security ("DHS") since his entry. (*Id.*)

13 In July 2021, Petitioner was convicted in the Superior Court of California, Humboldt
14 County, on one charge of reckless driving in violation of California Vehicle Code § 23013. (Doc.
15 No. 10 at 2.) In November 2024, Petitioner was arrested in Trinity County for attempted murder
16 in violation of California Penal Code § 187(a). (*Id.*) Petitioner was held in custody in relation to
17 that charge for ten months before the charges were dismissed. (Doc. No. 3 at 10.)

18 On September 3, 2025, shortly after Petitioner's release from custody related to the
19 dismissed charges, DHS took Petitioner into custody. (Doc. No. 10-1 at 2.) On that same date,
20 DHS issued a Notice of Intent to Issue a Final Administrative Removal Order charging Petitioner
21 as removable under section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"). (*Id.* at
22 2, 11–12.) On that form, Petitioner indicated that he wished to request asylum, withholding of
23 removal, or CAT relief. (*Id.*) Petitioner's removal order to Ireland was made final, and his asylum
24 claim was referred to an immigration judge on September 15, 2025. (*Id.* at 14–15.)

25 On November 19, 2025, Petitioner filed a humanitarian parole request pursuant to INA
26 section 212(d)(5) relating to a rare and serious medical condition for which Petitioner alleges he
27 is not receiving adequate treatment in detention. (Doc. No. 3 at 2.) Petitioner also alleges that he
28 has been assaulted while detained by DHS. (*Id.*) DHS has not responded to Petitioner's parole

1  request. (*Id.*)

2  **B.    Procedural Background**

3  On December 15, 2025, Petitioner filed a petition for writ of habeas corpus asserting the following claims: (1) violation of the Fifth Amendment Due Process Clause relating to his continued detention; (2) violation of the INA and implementing regulations relating to Respondents' failure to provide Petitioner with an individualized bond hearing; (3) violation of 8 C.F.R. § 212(b) and Immigration and Customs Enforcement ("ICE") Parole Directive 1102.1 relating to ICE's failure to respond to Petitioner's humanitarian parole request; and (4) immediate release under habeas corpus. (Doc. No. 1 at 3–4.)

Also on December 15, 2025, Petitioner filed a motion for a temporary restraining order seeking his "[r]elease from ICE custody pending adjudication of his asylum and parole proceedings." (Doc. No. 3 at 7.)

On December 23, 2025, the court issued an order granting in part and denying in part Petitioner's motion for a temporary restraining order. (Doc. No. 12.) The court denied Petitioner's request for immediate release from DHS custody, but ordered that Respondents "provide Petitioner with a constitutionally compliant bond hearing by no later than fourteen (14) days from the entry date of this order" and that at the "bond hearing, the government bears the burden to justify, by clear and convincing evidence, Petitioner's continued detention while his asylum claim proceeds." (*Id.* at 10.)

On January 2, 2026, an immigration judge held Petitioner's bond hearing pursuant to the court's December 23, 2025 order. (Doc. Nos. 19 at 1–2; 23 at 2.) On the same day, Petitioner filed the pending motion to enforce and modify habeas relief. (Doc. No. 19.)

On January 9, 2026, Respondents filed an omnibus motion to dismiss petitioner's habeas petition and opposition to Petitioner's motion to enforce and modify habeas relief. (Doc. No. 23.) Contemporaneous with filing their opposition, Respondents lodged with the court a CD containing the audio recording of the January 2, 2026 bond hearing and attested that the recording had been made available to Petitioner's counsel. (Doc. No. 21.) The court is in receipt of that CD and has considered the audio recording.

3

1  On January 12, 2026, Petitioner filed an omnibus opposition to Respondents' motion to
2  dismiss and reply in support of Petitioner's motion to enforce and modify habeas relief. (Doc. No.
3  24.)

**LEGAL STANDARD**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20 (2008). A plaintiff seeking a temporary restraining order bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).

A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the [motion for injunctive relief]." *Cal. Rifle & Pistol Ass'n, Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1048 (C.D. Cal. 2024); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015).

**ANALYSIS**

**A.      Likelihood of Success on the Merits**

Petitioner contends that the January 2, 2026 bond hearing "failed to satisfy the constitutional minimum required by this Court and the Ninth Circuit" because, at that hearing "DHS relied exclusively on an I-213 [Record of Deportable/Inadmissible Alien] (which Petitioner concedes is administratively accurate) and an FBI rap sheet containing dismissed charges, uncorroborated allegations, and entries Petitioner credibly disputes as not pertaining to him."

(Doc. No. 19 at 1–2.) Thus, Petitioner argues, the government presented "no admissible or corroborated evidence" supporting the immigration judge's determination that Respondents showed by clear and convincing evidence that Petitioner was not eligible for parole. (Doc. No. 19 at 3.)

In their opposition, Respondents argue that Petitioner's motion for immediate release is premature because Petitioner "can pursue—as he indicated at his bond hearing that he was preserving his right to pursue—an administrative appeal of the IJ's decision to deny bond." (Doc. No. 23 at 5.)

The court agrees with Respondents. In their opposition, Respondents cite *Leonardo v. Crawford*, 646 F.3d 1157 (9th Cir. 2011), in which the Ninth Circuit considered whether a noncitizen challenging the result of his immigration bond hearing must appeal that determination to the Board of Immigration Appeals before challenging the determination by habeas petition in a district court. In *Leonardo*, the petitioner filed a habeas petition in district court alleging that his prolonged immigration detention was unlawful. 646 F.3d at 1159. The trial court ordered that petitioner either be provided a bond hearing or be released. *Id.* Respondents provided petitioner a bond hearing and the immigration judge denied bond, concluding that petitioner posed a danger to the community. *Id.* Rather than appealing that bond determination to the Board of Immigration Appeals, petitioner filed a motion for review of the bond determination in the pending habeas case, "arguing that the hearing failed to satisfy due process or conform to the district court's previous order." *Id.* The trial court denied the petitioner's motion and the Ninth Circuit affirmed, finding that petitioner "should have exhausted administrative remedies by appealing to the [Board of Immigration Appeals] before asking the federal court to review the IJ's decision." *Id.* at 1160. Here, as in *Leonardo*, Petitioner challenged the immigration judge's bond determination in this court before pursuing his appeal in the Board of Immigration Appeals. Further, Petitioner expressly preserved his right to appeal to the Board of Immigration Appeals at the bond hearing. (Doc. No. 21 at 24:12.) The preservation of his right to appeal is confirmed in the immigration judge's order denying bond. (Doc. No. 19 at 9.)

In his reply, Petitioner contends that the court should consider his motion despite his

failure to appeal to the Board of Immigration Appeal because there was no constitutionally compliant bond hearing given that the immigration judge "improperly shifted the burden of proof to the noncitizen and relied solely on an FBI RAP sheet and Form I-213, both which lack the evidentiary reliability required under" law. (Doc. No. 24 at 1.) But the immigration judge emphasized on the record at the beginning of the hearing that the government bore the burden to "prove by clear and convincing evidence, that Respondent is a danger and/or a flight risk." (Doc. No. 21 at 2:50-3:00.) When the immigration judge denied bond, she again noted that "the department [] met its burden of showing by clear and convincing evidence that Petitioner is both a danger and a flight risk" such that bond was improper. (*Id.* at 23:55–24:00.)

Further, while Petitioner contends that his FBI RAP sheet showing his conviction for reckless driving and the dismissal of his claims for attempted murder lack the evidentiary reliability required for an immigration judge to deny bond, the Board of Immigration Appeals decision he relies on for this proposition, *Matter of Guerra*, 24 I. & N. Dec. 37 (B.I.A. Sep. 28, 2006), directly contradicts this position.[2] *Guerra*, 24 I. & N. at 40 ("In the context of custody redeterminations, Immigration Judges are not limited to considering *only* criminal convictions in

---

[2] In his motion to enforce and modify habeas relief, Petitioner cites three additional cases for the proposition that "dismissed charges cannot establish dangerousness without reliable evidence." (Doc. No. 19 at 4.) First, Petitioner cites *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). In *Singh*, the Ninth Circuit explicitly rejected petitioner's "argument that his due process rights were violated when the IJ admitted his unauthenticated RAP sheet into evidence" because the "Federal Rules of Evidence do not apply strictly in immigration removal proceedings" and "DHS regulations delineating the rules of procedure for bond determinations in immigration court specify that an immigration judge may rely upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or the Service." *Singh*, 638 F.3d at 1209–10. Second, Petitioner cites *Garcia v. INS*, 204 F.3d 769 (9th Cir. 2000). Petitioner has provided incorrect reporter information in that citation, however, because the *Garcia* decision is found at *Garcia v. INS*, 222 F.3d 1208 (9th Cir. 2000), not found at 204 F.3d 769. In any event, Petitioner's citation to *Garcia* is unavailing because that decision pertains to a noncitizen's right to receive notice of their removal hearing, not consideration of dismissed criminal charges. Third, Petitioner cites *Pastor-Camarena v. INS*, 964 F.2d 365 (5th Cir. 1992). That reporter citation corresponds to *United States v. Green*, 964 F.2d 365 (5th Cir. 1998), a decision pertaining to mail fraud that is irrelevant here. The court located *Pastor-Camarena v. Smith*, 977 F. Supp. 1415 (W.D. Wash. 1997), however that case pertains to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 and has no relevance here either. The court will address these erroneous citations, as well as other erroneous citations found in Petitioner's motion and reply, by separate order.

assessing whether an alien is a danger to the community. . . Therefore, although we recognize that the respondent has not been convicted of the offenses charged in the criminal complaint, we find that unfavorable evidence of his conduct, including evidence of criminal activity, is pertinent to the Immigration Judge's analysis regarding whether the respondent poses a danger to the community.").

Petitioner challenges the sufficiency of the evidence supporting the immigration judge's bond determination rather than the constitutionality of the process by which that determination was reached. Consequently, Petitioner may not raise his challenge in this court until he has raised these issues in an appeal to the Board of Immigration Appeals. Accordingly, the court will deny Petitioner's motion to enforce and modify habeas relief.

## CONCLUSION

For the reasons explained above,

1. Petitioner Daniel James Cummins's motion to modify and enforce habeas relief (Doc. No. 19) is DENIED;
2. Petitioner's request for remote appearance (Doc. No. 29) is DENIED as moot;
3. The hearing set on Petitioner's motion to enforce and modify habeas relief for January 16, 2026 before District Judge Dena M. Coggins is VACATED;
4. Respondents are instructed to re-notice their pending motion to dismiss (Doc. No. 23) before the assigned Magistrate Judge pursuant to Local Rules 302(c)(17) and 230(a);
5. The hearing set on Respondents' motion to dismiss for February 20, 2026 before District Judge Dena M. Coggins is VACATED; and

/////
/////
/////
/////
/////
/////

6. This matter is referred to the assigned magistrate judge for further proceedings, including addressing Respondents' pending motion to dismiss.

IT IS SO ORDERED.

Dated: **January 15, 2026**

Dena Coggins
United States District Judge